**SAN ANTONIO DISTRICT DENTAL SOCIETY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. SA–71–CA–15.**

United States District Court,
W. D. Texas,
San Antonio Division.

Jan. 31, 1972.

Muckleroy McDonald, Solomon Casseb, Jr., San Antonio, Tex., for plaintiff.

John F. Murray, Ben A. Douglas and William W. Guild, Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WOOD, District Judge.

Plaintiff is an exempt organization under the provisions of 26 U.S.C.A. Sec. 501[c] [6]. On January 21, 1953, Plaintiff and the National Bank of Commerce of San Antonio, San Antonio, Texas, entered into an agreement whereby Plaintiff sponsored a payment plan offered by the bank to the members of the San Antonio District Dental Society which Plaintiff represents. The bank entered into separate agreements with individual Dentists under the terms of the San Antonio District Dental Society Payment Plan. The payment plan required the Dentists to pay into a special reserve fund at the bank five percent (5%) of their fees financed by the bank under the plan. The special reserve fund was the property of Plaintiff and was maintained for the primary purpose of protecting the bank from losses. The only source of funds deposited to the reserve fund was the payments from the membership of Plaintiff. Plaintiff furnished the bank with its membership lists and allowed the use of its name in connection with the plan.

Patients wishing to finance dental care signed notes payable to the dentists for the amount of their dental bill plus $6.50 per $100.00 per year as interest. The dentist was required under the terms of the plan to endorse the note back to the bank with the words "without recourse", receiving 95% of the bill amount, 5% being deposited to the Plaintiff's reserve account, and the bank would collect all payments, including interest. Before accepting such notes the bank was required under the plan to approve the credit of the patient.

The remaining balances of notes in default were charged to the Plaintiff's reserve account and endorsed to Plaintiff by the bank without recourse. During the ten year period ending May 31, 1968, net charges to the reserve account for 629 of such defaulted notes aggregated $99,512. Plaintiff used a collection agency to pursue collections on such defaulted notes, recovering $13,281 during the same ten year period after deducting the 50% collection fee. Such defaulted notes were effectively purchased by Plaintiff from its funds on deposit in the reserve account.

The terms of the payment plan required that the reserve account should accumulate funds until it equaled 15% (originally 25%) of the outstanding balances of notes financed under the plan. When the reserve account balance exceeded such requirement, such excess was to be paid to Plaintiff annually. During the ten year period ending May 31, 1968, the bank released from the reserve account and paid to Plaintiff $43,355 of such excess funds.

Plaintiff timely filed information returns on Form 990 for each of the ten fiscal years ending May 31, 1959, through 1968, fully disclosing the excess funds received from the reserve account and the net collections on the defaulted notes, describing such funds as income.

The returns also included the complete audit report of the Certified Public Accountants who prepared the returns, which report expressed uncertainty regarding the income tax status of such receipts.

Defendant, through its Internal Revenue Service, assessed Plaintiff income taxes and interest on the amounts Plaintiff received as excess reserve funds from the bank and as collections on defaulted notes for the fiscal years 1959 through 1968, which assessments Plaintiff paid. Plaintiff sought administrative refund of the assessments, and when the same was not achieved, it brought this suit to recover the taxes and interest it paid.

Jurisdiction of this controversy is properly founded on 28 U.S.C.A. Secs. 1346[a] [1] and 1402[a] [2].

■ The first issue here to be decided is whether the returns filed by Plaintiff on Form 990 for the fiscal years 1959 through 1965 disclosed sufficient facts upon which liability for the tax on unrelated business taxable income could be determined, and whether such returns were filed in good faith, so as to start the running of the period of limitations on assessment of the unrelated business income tax imposed by Sec. 511 of the Internal Revenue Code.

Evidence produced at trial before the Court showed that Plaintiff's returns for such seven years were filed in good faith and that they disclosed sufficient facts upon which liability for the tax on unrelated business taxable income could be determined. California Thoroughbred Breeders Association v. Commissioner, 47 T.C. 335; Dec. 28, 225 (1966) Acq.; Rev.Rul. 69–247.

■ The second issue here to be decided is whether the amounts received in the fiscal years 1966, 1967 and 1968, as excess reserve funds and as collections on defaulted notes constitute unrelated business taxable income under 26 U.S.C. A. Sec. 501[b], as defined by 26 U.S.C. A. Sec. 512[a]. These sections provide, in pertinent part:

(26 U.S.C.A. § 501(b)) "Tax on unrelated business income.—An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in part II of this subchapter (relating to tax on unrelated income). . . ."

(26 U.S.C.A. § 512(a)) "Definition. —The term 'unrelated business taxable income' means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it. . . ."

26 U.S.C.A. § 513(a) defining an unrelated trade or business provides in pertinent part:

"General rule.—The term 'unrelated trade or business' means in the case of any organization subject to the tax imposed by section 511 [which imposes the tax prescribed by 26 U.S.C.A. § 501(b)], any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational or other purpose or function constituting the basis for its exemption under section 501. . . ."

On analysis of these provisions of the Internal Revenue Code, it appears that "unrelated business taxable income" is made up of the following three elements:

1. An activity which is a trade or business.

2. The trade or business is not substantially related to the exempt purposes of the organization.

3. The trade or business is regularly carried on by the exempt organization.

The applicable Treasury Regulation is Section 1.513–1 (prior to amendment in December 1967), viz:

"§ 1.513.1. Definition of unrelated trade or business.—(a) In general. (1) As used in section 512(a), the term 'unrelated business taxable income' includes only income from an unrelated trade or business regularly carried on, and the term 'trade or business' has the same meaning as it has in section 162.

(2) The income of an exempt organization is subject to the tax on unrelated business income only if two conditions are present with respect to such income. *The first condition is that the income must be from a trade or business which is regularly carried on by the organization.* The second condition is that the trade or business must not be substantially related (aside from the need of the organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose of function constituting the basis for its exemption under section 501, * * *. Whether or not an organization is subject to the tax imposed by section 511 shall be determined by the application of these tests to the particular circumstances involved in each individual case. * * *" (emphasis supplied).

█ Evidence produced at time of trial before the Court showed that Plaintiff engaged in activities involving the payment plan consisting of furnishing the bank its membership lists, announcing through its monthly Journal the initial agreement whereby the plan was adopted, permitting the bank to use the dental society name in its advertising and forms, and permitting its members to deposit funds in the reserve account held by the bank as security or collateral for notes financed by the bank under the plan.

The first problem is in defining "trade or business." It is nowhere defined in the Internal Revenue Code, except in 26 U.S.C.A. § 7701 it is stated to include public occupations. Webster's 3d New International Dictionary defines trade as "the business one practices or the work in which one engages regularly" and business as "a usu. commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving an independence of judgment and power of decision." Neither "trade" nor "business" is considered a technical word or a word of legal art. 87 C.J.S. Trade, p. 202, 12 C.J.S. Business, p. 761. When one engages in a trade or business, he usually has some control over the result of his endeavors, as indicated by the above definitions. In none of the activities ascribed to Plaintiff is there any evidence of control over the possible financial result of these activities, other than the possible mitigation of its losses from defaulted notes. If any revenue were generated, it would be by the sole efforts of the bank in selling the payment plan to the member dentists and in collecting the notes financed under the payment plan. The selling of the payment plan, the credit investigations, the collection of the note payments, the earning of interest income, the bookkeeping, in short, everything connected with the payment plan was wholly in the hands and under the control of the bank. Only when notes were in default were they turned over to Plaintiff, who effectively purchased the uncollected balances at face value with no possibility of profit. The only significant participation of Plaintiff in the payment plan was that it was made available under its name to its members. Otherwise, Plaintiff was only passively involved. Thus the activities of Plaintiff regarding the payment plan by the common and generally accepted understanding of the terms cannot be considered to be the conduct of a trade or business. Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Helvering v. Highland, 124 F.2d 556 (C.A.4, 1942); Orange County Builders Association, Inc., v. United States of Ameri-

ca, 65–2, USTC 9679 (S.D.Cal., 1965); Oklahoma Cattlemen's Association, Inc., v. United States of America (W.D.Okl., 1969) 310 F.Supp. 320.

Next, with reference to whether the payment plan is not substantially related to the exempt purpose of Plaintiff, the arrangement of making a payment plan available to the dental society membership on reasonable terms where none was previously available is deemed to be substantially related to the purposes for which the exempt status was granted. Plaintiff is an exempt organization by virtue of 26 U.S.C.A. Sec. 501[c] [6]. Plaintiff's Constitution states that it was organized " . . . to promote understanding, mutual esteem and unified effort among the members, all to the end that the quality of dental service rendered in our community may be constantly improved, and to improve the relations of the profession with the public." Making such payment plan available to the membership, and through the members, to the public is consistent with and substantially related to the stated purposes of the organization under the circumstances present and, therefore, making the payment plan available to its members is related to its exempt purposes. The second element of no substantial relation to the exempt purpose of Plaintiff is, therefore, not present. Orange County Builders Association, Inc., v. United States of America and Oklahoma Cattlemen's Association, Inc., v. United States of America, supra.

Lastly, as the Plaintiff is not engaged in an activity which is a trade or business, it follows that there cannot, thus, be a trade or business regularly carried on by Plaintiff.

Plaintiff is entitled to recover the amounts for which it has sued, together with interest thereon at 6% per annum as provided by law from the dates of payment by Plaintiff to the date of payment by Defendant.