CALIFORNIA THOROUGHBRED BREEDERS ASSOCIATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5415–64. Filed December 29, 1966.

*Adam Y. Bennion*, for the petitioner.
*Roger Rhodes*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies of $13,598.20 and $1,591.17 in petitioner's Federal income tax for the taxable years 1959 and 1960, respectively. The determination involves the following issues:

(1) Whether the filing of an information return (Form 990) commenced the running of the period of limitations against assessment of the tax on unrelated business income imposed by section 511; [1] and

(2) If not, whether any of the income petitioner realized during 1959 and 1960 from its activities in connection with sales of horses (herein referred to as breeders sales) constituted unrelated business income within the meaning of section 511.

### FINDINGS OF FACT

The California Thoroughbred Breeders Association (hereafter referred to as petitioner) was organized on May 8, 1937, under the laws of the State of California as a nonprofit corporation.

By letter dated November 1, 1945, respondent reaffirmed an earlier ruling, dated September 9, 1943, that petitioner was entitled to exemption from Federal income tax under section 101(1) of the Internal Revenue Code of 1939 which is identical with section 501(c)(5) of the Code of 1954, and which exempts "labor, agricultural, or horticultural organizations."

Respondent concedes that petitioner's basic exempt status was in full force and effect during the taxable periods involved herein.

Respondent's letter of exemption, dated November 1, 1945, noted the fact that petitioner's activities included "holding an auction sale for members' California thoroughbred horses."

A Form 990 has been filed by petitioner with the district director of internal revenue at Los Angeles, Calif., for each year from 1946

---

[1] Except as otherwise specified, all references are to the Internal Revenue Code of 1954.

to the present time. The Forms 990 for the calendar years 1959 and 1960 were timely filed, i.e., on or before May 15, 1960, and May 15, 1961, respectively. The notice of deficiency was mailed to petitioner on August 24, 1964, more than 3 years after the filing of the Form 990 for each taxable year in controversy.

The general instructions on the back of each Form 990 beginning with the year 1951 have included a statement that, with respect to taxable years beginning after December 31, 1950, a tax is imposed upon exempt organizations on income derived from operation of a business enterprise which is unrelated to the purpose for which such organization received an exemption. The instructions specify such income and tax are to be reported on Form 990-T.

Beginning with the year 1951, each Form 990 asked whether a return on Form 990-T had been filed for that year, and, if so, where filed and the unrelated business gross income reported. In each Form 990 filed by petitioner the initial question was answered "No."

The entries on petitioner's Forms 990 for the taxable years 1959 and 1960 under the heading "Income, Dues, Contributions, etc." contained the following:

| Income, dues, contributions, etc. | 1959 | 1960 |
|---|---|---|
| Dues, assessments from members | $13,055.38 | $13,239.81 |
| Gross receipts from business activities (state nature): | | |
|   (a) Foal registration fees | 22,980.00 | 24,961.73 |
|   (b) Magazine-advertising and subscription | 98,593.23 | 101,808.95 |
|   (c) Breeders' sales | 58,426.55 | 28,083.94 |
| Gain (or loss) from sale of assets | (129.31) | 0 |
| Other income | 5.00 | 5.96 |
|     Total | 192,930.85 | 168,100.39 |

On its Forms 990 for the taxable years 1959 and 1960, petitioner listed the following as expenses:

| | 1959 | 1960 |
|---|---|---|
| Wages, salaries, and commissions. Number of employees (12) | $71,025.69 | $75,684.00 |
| Taxes | 4,328.31 | 5,016.31 |
| Depreciation | 7,107.32 | 6,204.08 |
| Miscellaneous expenses: | | |
|   (a) Foal registration | 1,243.90 | 1,624.61 |
|   (b) Magazine production | 43,170.76 | 48,266.97 |
|   (c) Breeders' sales | 986.25 | 0 |
| Miscellaneous expenses: | | |
|   (a) Administrative and general | 17,282.76 | 19,955.65 |
| Contributions | 12,500.00 | 201.54 |
| Additions to surplus and reserves (excess income over expenses) | 35,285.86 | 11,147.23 |
|     Total | 192,930.85 | 168,100.39 |

Petitioner did not file a Form 990-T for any taxable year. Petitioner's income tax matters have been handled by a national firm of certified public accountants, which firm prepared and filed the Form 990 for each of the taxable years 1959 and 1960 and for all other years

since 1946. The question of whether petitioner was in receipt of taxable income was not raised when the Forms 990 were filed, and petitioner believed that the accounting firm prepared and filed for it such returns as were applicable to it. Petitioner determined in good faith that it was an exempt organization and had no taxable income and that, therefore, it was not required to file any return other than Form 990.

OPINION

We deal first with the question whether the deficiencies herein are barred on the ground that they were not asserted against the petitioner within the applicable period of limitations. We hold that they were so barred. As a consequence, we do not reach the second question involved herein, namely, whether the net income derived by petitioner from its breeder sales constitutes unrelated business income within the meaning of section 511.

Section 6033 provides in pertinent part:

(a) GENERAL.—Every organization, except as hereinafter provided, exempt from taxation under section 501(a) shall file an annual return, stating specifically the items of gross income, receipts, and disbursements, and such other information for the purpose of carrying out the provisions of subtitle A as the Secretary or his delegate may by forms or regulations prescribe, and shall keep such records, render under oath such statements, make such other returns, and comply with such rules and regulations, as the Secretary or his delegate may from time to time prescribe, except that, in the discretion of the Secretary or his delegate, an organization described in section 401(a) may be relieved from stating in its return any information which is reported in returns filed by the employer which established such organization. * * *

Pursuant to the authority contained in section 6033(a), respondent by regulation has provided for the filing of an annual return by petitioner's type of exempt organization on Form 990 and of a return with respect to unrelated business income on Form 990-T. Secs. 1.6033–1 (a) and (i) and 1.6012–2(e), Income Tax Regs.

Section 6501(a) provides that the amount of any income tax (which includes the tax on unrelated business income) "shall be assessed within 3 years after the return was filed." Section 6501(g)(2) provides as follows:

(2) EXEMPT ORGANIZATIONS.—If a taxpayer determines in good faith that it is an exempt organization and files a return as such under section 6033, and if such taxpayer is thereafter held to be a taxable organization for the taxable year for which the return is filed, such return shall be deemed the return of the organization for the purposes of this section.

The narrow issue thus presented is whether the filing of a Form 990–T (which petitioner concededly *did not* file) is essential to start the period of limitations running under section 6501(g)(2) with respect to the tax on unrelated business income, or whether the filing of Form 990 (which petitioner concededly *did* file) was sufficient for

that purpose. Petitioner asserts that the plain language of the statute supports its contention that the filing of Form 990 brought section 6501(g)(2) into play and further asserts that, in any event, our decision herein is controlled by *Germantown Trust Co.* v. *Commissioner*, 309 U.S. 304 (1940). Respondent makes the contrary contention, arguing that section 6501(g)(2) applies only where an organization's basic exemption from tax is revoked and that the instant situation falls within the ambit of *Commissioner* v. *Lane-Wells Co.*, 321 U.S. 219 (1944), and *Automobile Club* v. *Commissioner*, 353 U.S. 180 (1957).

Section 6501(g)(2) was enacted for the first time as part of the Internal Revenue Code of 1954.[2] It was not contained in the bill as it passed the House, having been inserted by the Senate Finance Committee. The legislative history is sketchy, the only reference to that section being contained in the following excerpts from the committee report:

> Your committee provided that *information returns* filed by organizations which had supposed they were tax exempt *are to have the same effect as corporate income tax returns* in starting the running of the statute of limitations. [Emphasis added. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 145 (1954).]

This language was reaffirmed at the time section 6501(g)(2) was amended in 1958 in respects not material herein (see Pub. L. 85-866, 85th Cong., 2d Sess. (1958), sec. 81(a)). At that time the Committee on Ways and Means of the House of Representatives stated:

> Subsection (a) of this provision amends section 6501(g)(2) to make it clear that where an organization determines in good faith that it is an exempt organization and files *an information return, this return is to be deemed its return* for purposes of the running of the period of limitation on assessments and collections, not only where it is technically a corporation but also where it is a trust as well. [Emphasis supplied. H. Rept. No. 775, 85th Cong., 1st Sess., p. 44 (1957). Cf. S. Rept. No. 1983, 85th Cong., 2d Sess. p. 98, 233 (1958).]

Section 6501(g)(2) itself plainly states that if an exempt organization, such as petitioner herein, "files a return as such under section 6033, * * * such return shall be deemed the return * * * for purposes of this section." Section 6033 specifically refers to an annual information return (which respondent by regulation has characterized as Form 990). Petitioner filed a Form 990 for both years involved herein. It constituted "a return" and, under section 6501(g)(2), it is "deemed the return" for the purposes of the 3-year period of limitations. We do not agree with respondent's argument that the general authority

---

[2] At the time the tax on unrelated business income was first imposed in the Revenue Act of 1950, Congress included a provision which established Form 990 as a shield for so-called "feeder" corporations against any attempt by respondent retroactively to deny their exemptions. Pub. L. No. 814, 81st Cong., 2d Sess. (1950), sec. 302(b). That section, however, has only peripheral bearing on the instant situation as an indication of general legislative concern over possible efforts by respondent to reach back into the past.

to require the filing of "other returns" under section 6033 so modifies the specific reference to "an annual return" as to compel the conclusion that the references in section 6501(g)(2) are directed toward an "other return." We do not think that Congress intended to give respondent the power to avoid the application of section 6501(g)(2) by the device of requiring the filing of a Form 990–T as a separate return instead of as a schedule to Form 990.

We recognize that Congress in enacting section 6501(g)(2) was *primarily* concerned with the retroactive denial of the status of total exemption to corporations and other organizations which had determined in good faith that they were entitled to an exemption as such. But there is no evidence that this was the *exclusive* concern of Congress and indeed the legislative history as well as the statutory language indicates that such was not the case. Nor do we perceive any overriding considerations of policy which dictate a statutory construction that Congress intended that the filing of a Form 990 be limited to a defense against massive retaliation and not be available to repel lesser but often equally devastating attacks on the part of respondent.

In this connection, we are constrained to note that petitioner's Forms 990 contained considerable data relating to its potential tax liability. Respondent was clearly put on notice that the "Breeder Sales" were of large magnitude, accounting for $56,426.55 in 1959 and $28,083.94 in 1960, and might be unrelated. To be sure, an allocation of expenses attributable to the sales was not made, but the Forms 990 did itemize the nature and amount of petitioner's total expenses in various categories. It would appear that the Forms 990 showed sufficient facts upon which liability for the tax on unrelated business income could be determined.[3] Cf. *Germantown Trust Co.* v. *Commissioner, supra; Commissioner* v. *Lane-Wells Co., supra.*

Granted that the original purpose of the statutory requirement for filing a Form 990 was limited to furnishing respondent with information (see *Automobile Club* v. *Commissioner, supra* at 188), the purpose was expanded insofar as the period of limitations is concerned by the enactment of section 6501(g). We do not believe that, by such enactment, Congress intended that a return should not be a return for a given tax where respondent seeks to apply that tax to *a part* rather than to *all* of the income. We therefore hold that, by virtue of section 6501(g)(2), the deficiencies herein were not timely asserted, Rev. Rul. 62–10, 1962–1 C.B. 305, as modified by Rev. Rul. 64–132, 1964–1 C.B. 501, to the contrary notwithstanding.

Since our holding is based on the language of the statute itself, it would be unproductive for us to attempt to synthesize *Germantown*

---

[3] Respondent, of course, would have the benefit of the limitless period assessment contained in sec. 6501(c) if petitioner willfully concealed the true nature of these activities for the purpose of evading taxes.

*Trust Co.* v. *Commissioner, supra, Commissioner* v. *Lane-Wells Co., supra,* and *Automobile Club* v. *Commissioner, supra,* all of which involved taxable years prior to the effective date of section 6501(g)(2).

*Decision will be entered for the petitioner.*