*Decision will be entered under Rule 50.*

COLOMBO CLUB, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1109–68. Filed January 27, 1970.

*Robert L. Beery*, for the petitioner.
*John Gigounas*, for the respondent.

102

The primary issue for our decision is whether respondent exceeded the bounds of his discretionary authority by retroactively revoking petitioner's exemption letter and determining that petitioner is liable for tax on its income for the years 1954–64.

In 1959 petitioner was granted exempt status as being a social club within the meaning of section 501(c)(7), I.R.C. 1954.[3] However, in 1963 respondent advised petitioner that he proposed to revoke petitioner's exempt-status ruling and suggested that petitioner could file a brief opposing such action prior to the issuance of a final ruling. In 1965 respondent retroactively revoked his prior ruling, claiming that during 1954 and thereafter petitioner had made its facilities available to nonmembers and nonguests and was therefore not operated exclusively for pleasure, recreation, and other nonprofitable purposes. Sec. 1.501(c)(7)–1, Income Tax Regs. Petitioner has conceded that during the years in issue it was not an exempt organization.

It is clear that respondent has authority under section 7805(b)[4] to retroactively revoke a ruling. In this regard the Supreme Court in *Automobile Club* v. *Comissioner*, 353 U.S. 180, 184 (1957), stated:

* * * it is clear from the language of the section [7805(b)] and its legislative history[9] that Congress thereby confirmed the authority of the Commissioner to correct any ruling, regulation or Treasury decision retroactively, but empowered him, in his discretion, to limit retroactive application to the extent necessary to avoid inequitable results. [Footnote omitted.]

The Supreme Court went on to say that unless the circumstances of the case show that the Commissioner abused this discretion the Commissioner's action would not be disturbed.

It is petitioner's contention that respondent abused the discretion vested in him under section 7805(b) when he retroactively revoked petitioner's exempt status. In support of its contention petitioner argues that all of the matters complained of by respondent in its letter of revocation were known to respondent when he ruled that

---

[3] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) * * * shall be exempt from taxation * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(7) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

[4] Sec. 7805(b) provides:

(b) RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

petitioner was an exempt social club within the purview of section 501(c)(7).

Respondent, on the other hand, claims that at the time he determined petitioner was an exempt organization and for several years thereafter he was not aware of nor was he informed of the activities conducted by the petitioner which were not exemplary of an exempt social club. It is argued by respondent that petitioner misrepresented or omitted material facts in its application for exemption and thereafter in its information returns filed annually with respondent.

It is well settled that in circumstances where there has been a misrepresentation or omission of material facts upon which the issuance of a ruling is based the respondent's retroactive revocation of the ruling does not amount to an abuse of discretion. *Birmingham Business College, Inc.* v. *Commissioner*, 276 F. 2d 476 (C.A. 5, 1960); *Stevens Bros. Foundation, Inc.* v. *Commissioner*, 324 F. 2d 633 (C.A. 8, 1963), reversing and remanding on another issue 39 T.C. 93. Compare, however, *Lesavoy Foundation* v. *Commissioner*, 238 F. 2d 589 (C.A. 3, 1956), reversing 25 T.C. 924, in which the Court of Appeals said:

> Although there is ample authority that the Commissioner may change retroactively a ruling of general application,[4] there is a dearth of cases involving individualized taxpayers' rulings. This is so because the Commissioner has almost invariably followed a policy of honoring his rulings and making changes prospective only, since the much criticized case of James Couzens, 1928, 11 B.T.A. 1040, * * *
>
> On the other hand, there is respectable authority that the Commissioner may not retroactively change an individualized taxpayer's ruling, unless the taxpayer is himself estopped from relying on the ruling in good faith because he has concealed the facts, or because of some other fraud or misrepresentation.[7]
>
> [Footnotes omitted.]

In the *Lesavoy* case the Court of Appeals found that the taxpayer fully disclosed the information required by the informational return (a change in its activities), and we do not understand that case to stand for the proposition that the Commissioner cannot retroactively revoke an individualized ruling when the disqualifying facts were not fully disclosed to him when the ruling was made. See *Stevens Bros. Foundation, Inc.* v. *Commissioner, supra*, in which both this Court and the Court of Appeals distinguished the *Lesavoy* case on the same grounds.

We are not dealing here with a situation where there has been a change by the organization in its manner of operation subsequent to the issuance of an exemption ruling, but with a situation where respondent contends that at the time he issued the exempt ruling he was not fully and correctly informed of the petitioner's activities, which petitioner now concedes disqualify it for exempt status.

We are satisfied from the record that respondent was not fully and correctly informed at the time he issued his ruling that a substantial part of petitioner's income was being derived from the rental of its facilities to individuals and groups who were not members nor bona fide guests of members, and of the efforts being made by petitioner to obtain outside business through the medium of advertising. There was nothing in the exemption application nor in the information returns filed by petitioner which revealed these facts. The answers to questions on those forms would tend to negative such facts. The record does not reveal whether a complete audit of petitioner's books would have fully disclosed the situation.

Perhaps respondent should have been more inquisitive before issuing his ruling, in view of the fact that someone had suggested to his agent in 1956 that petitioner's activities might not be limited to those of an exempt organization. However, the evidence is not clear that respondent ever made an actual audit of petitioner's books as a result of this suggestion and furthermore we think respondent is entitled to rely on the information supplied by petitioner on its application and information forms in issuing a ruling. We said in *Stevens Bros. Foundation, Inc.*, 39 T.C. 93, 106:

> Whatever the nature of the limitations imposed on respondent when he issues a ruling or otherwise acts with regard to a particular taxpayer, it is clear that those limitations apply only to situations of which respondent has been made aware. Respondent is not barred from changing his rulings retroactively where he was not fully or correctly informed as to the material facts upon which the rulings were based or where there have been material changes in law or fact subsequent to the time respondent acted. [Citations omitted.]

On its exemption application form, in answer to the question, "Are nonmembers other than bona fide guests of members permitted to use the club facilities or participate in or attend any functions or activities conducted by the organization," petitioner answered "No." Petitioner attempts to explain this answer by showing that it was petitioner's understanding during the period in question that any person or group sponsored by a member of petitioner was considered to be a guest. Petitioner cites the following definition of "guest" as given in Webster's New Collegiate Dictionary (1961 ed.) as supporting its misunderstanding of the term "guest": "A person entertained in one's house or at one's table; *a visitor entertained without pay; hence, a person to whom the hospitality of a home, club, etc., is extended.* Any person who lodges, boards, or receives refreshment, for pay, at a hotel, or the like; patron." (Emphasis added.)

To the contrary, we think this definition refutes, rather than supports, petitioner's statement on the application form that its facilities

were not available to nonmembers other than bona fide guests of members, within the context used. The nonmembers who used the facilities were charged for the privilege, whether sponsored by members or not; and the term "guest," when used on this particular form, could not be construed to refer to guests at a hotel or other commercial establishment.

Finally, we can find no abuse of discretion on the part of respondent in retroactively revoking his ruling under the particular circumstances of this case. Petitioner now concedes that it was not entitled to exempt status for any of the years here involved; and it is stipulated that petitioner conducted its operations in the same manner throughout the period. Petitioner did not even file information returns for the years 1954–58 until 1966 and did not file an exemption application until 1958, despite the advice of its accountant in 1954 that it should do so. When it did file an exemption application in 1958 and thereafter when it filed information returns the information reported about the use of its facilities was certainly not clear and candid. There is no evidence that respondent would have issued the exemption ruling had he been fully informed; his revocation does not appear to be a change of heart, but rather a reappraisal of the situation upon getting the complete facts. To limit respondent's revocation to the date it was issued would be to permit petitioner to profit from its own misconstruction of the law or misrepresentation of the facts. We can find no abuse of discretion on the part of respondent under the circumstances, and we hold for respondent on this issue.

In view of our decision above, we must now determine whether respondent was barred by the statute of limitations from asserting deficiencies for each of the taxable years 1954 through 1958. Petitioner contends that the filing of the application for exemption, the submission of financial data, and the audit of that information by respondent constituted the filing of a return sufficient to start the statute of limitations running for the years 1954 through 1958. Section 6501(a) states the general rule as follows: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * *." It is not disputed that petitioner did not file corporate tax returns for the years 1954 through 1958. It was not until 1966 that petitioner, at the request of respondent, filed information returns (Form 990) for those years.

In regard to what type of return is necessary to start the running of the statute of limitations, section 6501(g)(2) states:

If a taxpayer determines in good faith that it is an exempt organization and files a return as such under section 6033, and if such taxpayer is thereafter held

to be a taxable organization for the taxable year for which the return is filed, such return shall be deemed the return of the organization for purposes of this section.

This Court has held in *California Thoroughbred Breeders Association*, 47 T.C. 335 (1966), that the filing of an information return (Form 990) started the running of the statute of limitations under section 6501(g)(2).[5]

In view of the fact that no corporate income tax returns for the years 1954–58 were ever filed and the fact that the statutory notice of deficiency was mailed to petitioner within 3 years of the filing of information returns for the years 1954 through 1958, the statute of limitations does not bar the deficiencies for those years.

Petitioner's contention that the filing of the application for exemption and supporting financial data constitutes the filing of a return is without merit since the Supreme Court in *Automobile Club* v. *Commissioner, supra*, held that the statute of limitations would not begin to run until the actual filing of the return.

The last issue before us is whether petitioner's failure to file tax returns for each of the years 1954 through 1958 was due to reasonable cause or willful neglect. The respondent has asserted additions to tax under section 6651(a) for the years 1954 through 1958 against petitioner. Section 6651(a) provides as follows:

In case of failure to file any return required * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

The maximum 25-percent addition to tax has been asserted for each of the years 1954 through 1958.

Petitioner argues that respondent acted in an inconsistent and capricious manner by asserting these additions to tax since in its determination letter dated June 30, 1959, respondent informed petitioner that income tax returns were not required to be filed unless there was a change in the character of petitioner's organization, its purposes, or methods of operation. Put simply, petitioner's argument is that the failure to file was a result of respondent's written advice and was therefore due to reasonable cause.

The petitioner relies on the case of *K. O. Lee Co., Inc.* v. *United States*, an unreported case (N.D. S. Dak. 1957; 52 A.F.T.R. 1543, 57–1

---

[5] This provision was not contained in the 1939 Code under which *Automobile Club* v. *Commissioner*, 353 U.S. 180 (1957), was decided.

U.S.T.C. par. 9491), as holding that the addition to tax is improper when the failure to file is based upon the advice of the Internal Revenue Service. In that case the plaintiff filed corporate tax returns instead of personal holding company returns for the years 1943 through 1945. An audit of plaintiff's books was conducted in 1947. The agent conducting the audit did not determine that the plaintiff was a personal holding company. In 1951 the Commissioner asserted the personal holding company tax and the maximum 25-percent addition to tax for failure to file personal holding company returns for the years 1943 through 1945. In holding that the plaintiff exercised ordinary business care and prudence the court stated:

Under these circumstances, and in further view of the fact that the Internal Revenue Service's own agent failed to determine that plaintiff was a personal holding company, I cannot hold that because plaintiff failed to seek the advice of a lawyer or public accountant, that such failure constitutes an absence of reasonable cause.

Thus, the finding of reasonable cause was not based on the Internal Revenue Service's action in that case, but was based upon all of the circumstances of the case.

Even though petitioner considered itself an exempt organization during the years 1954 through 1958, it was not actually granted exempt status until June 30, 1959. The rule regarding the filing of returns in this type of situation is stated in section 1.6033–1(c), Income Tax Regs., as follows:

An information return on Form 990, 990–A, 990 (SF), or 990–A (SF) is not required to be filed by an organization claiming an exempt status under section 501(a) prior to the establishment by the organization of such exempt status under section 501 and § 1.501(a)–1. If the date for filing an income tax return and paying the tax occurs before the tax-exempt status of the organization has been established, the organization is required to file the income tax return and pay the tax. * * * Upon establishment of its exempt status, the organization may file a claim for a refund of income taxes paid for the period for which its exempt status is established.

The evidence shows that petitioner's accountant advised petitioner in 1954 to file income tax returns and an application for exemption. The application was filed in 1958, but petitioner never did file any corporate income tax returns for the years 1954 through 1958.

Based upon the requirement to file income tax returns, the advice of petitioner's accountant to file returns, and the lack of any evidence to rebut the respondent's finding of willful neglect, the assertion of additions to tax for the years 1954 through 1958 must be sustained.

*Decision will be entered for the respondent.*