Builders' Exchange of Texas, Inc. v. Commissioner.
Builders' Exchange of Texas, Inc. v. Commissioner
Docket No. 6120-70.
United States Tax Court
T.C. Memo 1972-172; 1972 Tax Ct. Memo LEXIS 86; 31 T.C.M. (CCH) 844; T.C.M. (RIA) 72172; August 14, 1972
Muckleroy McDonnold, 805 NBC Bldg., San Antonio, Tex., for the petitioner. W. Read Smith, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's income tax: Taxable Year Ended
Deficiency
June 30, 1967
$1,007.81
June 30, 1969
438.67
We are asked to determine whether respondent's retroactive revocation of his prior ruling granting petitioner tax-exempt status under section 501(c)(6)[1] and its predecessors was proper under the circumstances herein. *88 Findings of Fact Some of the facts have been stipulated and, together with the exhibits in support thereof, are incorporated herein by this reference. The petitioner herein is a corporation organized and existing under the laws of the State of Texas since 1901. Its central office and headquarters were located in San Antonio, Texas, at the time of the filing of the petition herein. Petitioner filed timely Forms 990, or Return of Organization Exempt From Income Tax, for the fiscal years ended June 30, 1967 and June 30, 1969 with the district director of internal revenue, Austin, Texas. Petitioner's constitution provides, in relevant part, as follows: The purpose of this organization is to promote integrity and good faith; to inclulcate just and equitable principles of dealing among those engaged in the Construction Industry; to establish and maintain uniformity in commercial usages; to acquire and disseminate statistics and information; to prevent and adjust controversies and misunderstandings which may arise between persons engaged in the building industry; to protect and encourage the building interests of San Antonio and trade territory; to establish and maintain a central *89 office and headquarters, with facilities for easy and convenient methods in transaction of business, as well as for conferences between members, trade and kindred organizations; to provide a means of promoting acquaintances and social engagement and to enlarge the business views of those who may become members, to the end that membership in this Exchange shall be a reasonable assurance of skill, honorable reputation and reliability. * * * Any individual, firm or corporation engaged in the construction industry in the capacity of contractor, subcontractor, manufacturer or dealer in building materials or in any lines affiliated with the construction industry shall be eligible for membership in the Exchange. 845 Prior, during, and subsequent to the taxable years here involved, one of the petitioner's essential activities was the maintenance of a plan room for the convenience of members in its central office or headquarters in San Nutonio, Texas. Plans and specifications for local construction projects, together with the names of general contractors bidding on specific projects, were filed in the plan room by various governmental construction agencies. Plans and specifications *90 were also filed by leading architects and engineers. The plan room was open daily for the use of members, and members could reserve plans for overnight use or over the weekend. Petitioner only permitted non-members to use its plan room when plans and specifications relating to United States Government projects were on exhibit to contractors for the purpose of submitting bids. Petitioner would not have been permitted to exhibit the plans and specifications of United States Government projects unless non-members were admitted to the plan room on these occasions. Petitioner published and distributed to its members on a bi-annual basis a publication entitled "Construction Buyers' Guide and Membership Directory." This booklet listed petitioner's members, architects, and engineers cooperating with petitioner, giving addresses, telephone numbers, and trade names, and building construction products and services which were available. Petitioner also published and distributed to its members five times per week a publication entitled "Construction News Bulletin." This bulletin contained information, obtained directly from governmental agencies and from architects and engineers, with respect *91 to projects available for bids and correct lists of bidders, together with their addresses and telephone numbers. It contained reports on contract awards and materials purchased by general contractors. It also served as an advertising medium for the products and services being made available to the industry. Copies of the bulletin were mailed to cooperating architects, engineers, and Federal agencies, i. e., those individuals and agencies who provided petitioner with construction news and plans without charge. Petitioner also provided, to its members, notary public service, statistical records on any phase of construction work, mail boxes for those members who did not maintain their own offices, receipt and forwarding of messages, telephone directories of various centers in the United States, and investigations of any nature concerning the building industry. Petitioner was granted an exemption from tax in 1937 under the predecessor of section 501(c)(6). In 1965, respondent proposed to revoke petitioner's tax exempt status, but, "on the basis of the information available," respondent later reversed his position. On July 31, 1970, respondent notified petitioner that its tax-exempt *92 status had been revoked for years beginning after June 30, 1964. Opinion Section 501(a), [2] in conjunction with section 501(c)(6), [3] exempts a business league from taxation, provided it is not organized for profit and no part of its net earnings inures to the benefit of any private shareholder or individual. *93 Respondent's regulations define a business league as an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. * * * Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. These regulations have been cited with approval as a correct interpretation, of legislative intent. See, e.g., Evanston-North Shore Board of Realtors v. United States, 320 F. 2d 375, 377 (Ct. Cl. 1963); American Automobile Association 19 T.C. 1146, 1158 (1953). The parties lock horns on whether petitioner's activities amounted to the 846 performance of particular services for individual persons. Respondent, pointing especially to the fact that the plan room and the biannual directory published by petitioner were available, for the most part, to members only, as opposed to the public or the construction *94 industry as a whole, contends that petitioner was not entitled to taxexempt status under section 501(a). Petitioner, of course, disagrees. Our resolution of the issue thus presented is complicated by the diffidence which petitioner, who has the burden of proof (Rule 32, Tax Court Rules of Practice), exhibited with respect to the trial of this case and the resulting gaps in the record herein. Two general principles control our decision herein. First, an activity, although not carried on for profit, may still render an organization ineligible for tax-exempt treatment if the activity is operated for the convenience and economy of its members. See United States v. Oklahoma City Retailers Association, 331 F. 2d 328, 330-331 (C.A. 10, 1964); Evanston-North Shore Board of Realtors v. United States, supra, 320 F. 2d at 378; Produce Exchange Stock Clearing Ass'n v. Helvering, 71 F. 2d 142, 143 (C.A. 2, 1934). Second, an organization whose principal activity is such as to justify exemption does not lose its tax-exempt status by engaging in an incidental nonqualified *95 activity. See United States v. Omaha Live Stock Traders Exchange, 366 F. 2d 749, 752 (C.A. 8, 1966); Evanston-North Shore Board of Realtors v. United States, supra, 320 F. 2d at 378; national Leather & Shoe Finders Association, 9 T.C. 121, 126 (1947). On the basis of the stipulation of facts, it seems clear that the various services offered by petitioner were performed primarily for the benefit of its members. Nothing in the sparse testimony, which augmented the stipulation of facts, justifies a contrary conclusion. Even if we assume that the plan room was petitioner's principal activity and that all other services were incidental thereto (an assumption which is highly doubtful on the record herein), it cannot be gainsaid that the benefits from the operation of that room were, to a very large degree, similarly limited to petitioner's members. On brief, petitioner contends that, inasmuch as it permitted non-members to use its plan room when plans and specifications relating to United States Government projects were on exhibit and since San Antonio is a well-known military installation, it stands to reason that the plan room was used by non-members *96 more often than not. The record herein is insufficient to support this contention. Moreover, we cannot even determine whether the plan room was so structured that a non-member gaining access to the room in order to see plans of United States Government projects therein would, in fact, have had access to non-governmental plans. We therefore hold that petitioner has failed to sustain its burden of proof that, during the taxable years in question, the principal activities carried on by it were not of such character as to disqualify it for exemption under section 501(c)(6). We are thus left with the question whether the retroactive revocation of petitioner's tax-exempt status was proper. Clearly, respondent has the power to apply his rulings retroactively; the only limitation is that his action not constitute an abuse of discretion. Section 7805(b); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184 (1957). Petitioner apparently relies upon respondent's regulations [4] to sustain his contention that such an abuse of discretion occurred because, according to its claim, *97 there has been no change in the law or facts since it was originally granted its exemption or since its activities were reviewed by respondent in 1965. See also Automobile Club of Michigan v. Commissioner, supra, 353 U.S. at 184; Lesavoy Foundation v. Commissioner, 238 F. 2d 589, 593 (C.A. 3, 1956), reversing 25 T.C. 924(1956); H.S.D. Co. v. Kavanagh 191 F. 2d 831, 846 (C.A. 6, 1951). Whatever may be the limits of respondent's discretion regarding the retroactivity of his rulings, we think it was, at the very least, incumbent upon petitioner to produce evidence of the facts and circumstances (including the inferences 847 favorable to petitioner which the respondent could, and, therefore, presumably did, draw therefrom) which formed the basis of respondent's prior actions and further evidence that such facts and circumstances constituted sufficient foundation for concluding that respondent's actions were a proper interpretation of the law. Conceivably, if petitioner had done so, we might have given his argument a sympathetic ear. [5] But the fact of the matter is that no such evidence is before us. We have no choice, therefore, *98 but to find that respondent did not abuse his discretion in applying his ruling of July 31, 1970 retroactively. Automobile Club of Michigan v. Commissioner, supra; Colombo Club, Inc. 54 T.C. 100, 109 (1970), affd. per curiam 447 F. 2d 1406 (C.A. 9, 1971). Finally, petitioner's suggestion that respondent's alleged failure to comply with his own internal procedures for a determination of whether petitioner qualifies as a tax-exempt *99 organization under section 501 (c)(6) is completely without foundation. Cf. Rosenberg v. Commissioner, 450 F. 2d 529 (C.A. 10, 1971), affirming a Memorandum Opinion of this Court; H. L. McBride, 23 T.C. 901, 910 (1955). Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation. - An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504. ↩
3. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. * * * (c) List of Exempt Organizations. - The following organizations are referred to in subsection (a): * * * (6) Business leagues, chambers of commerce, real-estate boards, or boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.↩
4. Section 1.501(a)-1(a)(2), Income Tax Regulations provides: * * * Subject only to the Commissioner's inherent power to revoke rulings because of a change in the law or regulations or for other good cause, an organization that has been determined by the Commissioner or the district director to be exempt under section 501(a)↩ or the corresponding provision of prior law may rely upon such determination so long as there are no substantial changes in the organization's character, purposes, or methods of operation. * * * 5. See Judge Goldber's concurring opinion in Etter Grain Co., Inc. v. United States, ( C.A. 5, June 7, 1972, 29 A.F.T.R. 2d 72-1375, 72-1 USTC 9465↩).