HARWOOD ASSOCIATES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5940-72.    Filed November 26, 1974.

*J. Ernest Brophy,* for the petitioner.
*Louis J. Zeller,* for the respondent.

FAY, *Judge:* Respondent has determined the following deficiencies in petitioner's Federal income tax:

| FYE Aug. 31— | Deficiency |
| --- | --- |
| 1968 | $469.87 |
| 1969 | 242.12 |
| 1970 | 2,094.90 |

The issues presented for decision are: (1) Whether it was proper for respondent retroactively to withdraw a determination letter which held petitioner's profit-sharing retirement plan qualified under section 401(a) of the Internal Revenue Code of

1954;[1] and if so, (2) to what extent petitioner was entitled to claim deductions in the years before us by reason of the contributions which it made to a trust established pursuant to that plan.

FINDINGS OF FACT

Certain facts have been stipulated by the parties and are found accordingly. The stipulation of facts and exhibits appended thereto are incorporated herein by this reference.

Petitioner Harwood Associates, Inc., was a corporation organized and existing under the laws of the State of New York and engaged in the business of selling products on behalf of several manufacturers. Its principal office was at 661 Pittsford-Victor Road, Pittsford, N.Y., when the petition herein was filed. Petitioner was an accrual basis taxpayer; its corporate income tax returns for its fiscal years ended August 31, 1968, 1969, and 1970, were filed with the district director of internal revenue for Buffalo, N.Y.

At all times relevant to the disposition of this case, stock ownership in petitioner was held by the following parties in the percentages set forth below:

|  | 8/31/67 | 8/31/68 | 8/31/69 | 8/31/70 |
|---|---|---|---|---|
| Herbert B. Collins, Jr. | 53.68 | 53.68 | 53.68 | 50.00 |
| Richard G. Collins | 14.74 | 14.74 | 14.74 | 50.00 |
| Annette L. Collins | 31.58 | 31.58 | 31.58 | 0 |
|  | 100.00 | 100.00 | 100.00 | 100.00 |

During the same period petitioner's officers were Herbert Collins, Jr. (Herbert), and Richard Collins (Richard), his brother. They, together with Herbert's wife, Annette L. Collins, also served as petitioner's directors. None of these was paid a salary by petitioner; rather, Herbert and Richard were on the payroll of Dynatherm, Inc. (Dynatherm), another corporation under the control of the Collins family and headquartered at 661 Pittsford-Victor Road.

During the years listed below, petitioner paid the following amounts to its employees[2] as compensation for services rendered

---

[1] All section references are to the provisions of the Internal Revenue Code of 1954 in effect during the taxable years in issue.

[2] We have been asked to determine whether Herbert B. Collins, Jr., and Richard G. Collins were in the employ of petitioner during this period. For reasons that will be stated in our opinion, we consider it unnecessary to the disposition of this case that we make such

by them:

| | FYE 8/31/67 | FYE 8/31/68 | FYE 8/31/69 | FYE 8/31/70 |
|---|---|---|---|---|
| Mary Macaluso | --- | $2,530.00 | $5,580.00 | $4,930.00 |
| Wayne Lausin | $21,986.88 | 30,001.93 | 43,110.57 | 30,446.73 |
| Ruth Mallet | 6,110.00 | 3,260.00 | --- | --- |
| Joyce Whitbeck | 80.00 | 192.00 | --- | --- |
| Dolores Friel | 4,761.39 | 6,440.00 | 7,810.00 | 7,780.00 |
| Mary Reichenbach | --- | --- | --- | 1,860.00 |

The customary employment of the aforesaid, save Joyce Whitbeck, was for more than 20 hours per week and for more than 5 months per calendar year; and their duties, except those of Wayne Lausin (Lausin), were primarily of a clerical nature.

Lausin was first employed by petitioner as a salesman in July 1959 and continued in that position throughout the period now under consideration. Though neither a shareholder nor chosen for a position in the formal structure of petitioner's management, Lausin did participate, together with the Collins brothers, Mike Ferman (Ferman), and John Bacon (Bacon) in making decisions affecting corporate policy. While the Collins brothers, Ferman, and Bacon concerned themselves principally with the operations of Dynatherm, Lausin largely bore the responsibility of seeing that petitioner's business was discharged.

Wishing to provide for their retirements, the Collins brothers, Ferman, Bacon, and Lausin decided that Dynatherm and petitioner should adopt retirement plans qualified under section 401(a). As a consequence of that decision, petitioner adopted a noncontributory profit-sharing plan, effective as of August 31, 1967, and established a trust pursuant thereto. Pertinent to the disposition of this case are the following provisions of the plan:

### ARTICLE 3.—ELIGIBILITY AND MEMBERSHIP

3.1 Each Employee of the Employer is eligible for membership in this Plan as of the effective date or any anniversary date [Aug. 31 of each year] if he has satisfied all of the following eligibility requirements on the day preceding the effective date or such anniversary date as the case may be, retroactive to the first day of the current taxable year of the Employer.

(a) That he is customarily employed more than twenty hours in one week;

a determination and therefore decline to do so.

and

(b) That he is customarily employed more than five months in a period of twelve months.

3.2 Notwithstanding the positive statements as to eligibility herein made, membership in this Plan shall be entirely voluntary on the part of each Member. * * *

## ARTICLE 4.—EMPLOYER CONTRIBUTIONS

4.1 The amount of the contribution, out of net profit to be made by the Employer under the Plan for each year beginning with the year ended August 31, 1967 shall be any amount in the discretion of the Board of Directors. * * *

However, in no event shall the amount contributed exceed fifteen per cent (15%) of the total compensation paid or accrued to all Members for services rendered during said year. In addition, if for any year there is paid into the trust amounts less than the aforesaid fifteen per cent (15%), the excess, or if no amount is paid, the entire fifteen per cent (15%) shall be carried forward and be paid in the succeeding year in order of time, but the amount so paid under this sentence in any succeeding year shall not exceed fifteen per cent (15%) of the total compensation paid or accrued during such succeeding year to the Members under the Plan.

4.2 No Member hereunder shall be obligated or required to contribute to the Trust, it being specifically understood that the Employer shall be the sole contributor thereto.

4.3 The Employer may make payment of its contribution for any taxable year on any date or dates it elects, provided only that the total amount of its contribution for any taxable year shall be paid in full on or before the due date for filing the Employer's Federal Income Tax Return, including extensions of the filing time for such year. * * *

* * *

## ARTICLE 9.—SEVERANCE AND DISABILITY BENEFITS

* * *

9.2 A Member whose employment is terminated for reason other than retirement, disability or death, shall be entitled to benefits as follows:

(a) If severance of employment occurs within two (2) years of the date upon which the Employee became a Member hereunder, such Employee shall not be entitled to any benefits or rights under the Plan.

(b) If severance occurs more than two (2) years after the Employee has become a Member under the Plan, such Employee shall receive the percentage of his then beneficial interest in the Plan as shown in the table below for the number of full years of membership then completed.

| | | | |
|---|---|---|---|
| 2 Years | 10% | 7 Years | 60% |
| 3 Years | 20% | 8 Years | 70% |
| 4 Years | 30% | 9 Years | 80% |
| 5 Years | 40% | 10 Years | 90% |
| 6 Years | 50% | 11 Years | 100% |

* * *

ARTICLE 12.—DISCONTINUANCE OF CONTRIBUTIONS AND
TERMINATION OF PLAN

\* \* \*

12.5 Regardless of any other provisions of the Plan and Trust, in the event that the Employer fails to make timely payments of the full contribution due under the Plan Contribution Formula, or in the event that no contribution is due under the Plan Contribution Formula for two consecutive years, then, as of the anniversary date for which the full contribution was not timely paid, or as of the first anniversary date for which no contribution was made, the interest of the participants shall become nonforfeitable in all events. If subsequent contributions are made by the Employer, the vesting provisions which otherwise apply under the Plan will be applicable to those contributions.

Ruth Mallett (Mallett), Dolores Friel (Friel), and Lausin were all eligible to participate in the plan for the fiscal year ended August 31, 1967; but Mallett and Friel declined coverage, electing to receive a cash bonus instead. Friel, who was to remain in petitioner's employ throughout the period under consideration, repeated this choice in each of the years in issue. When Mary Macaluso and Mary Reichenbach became eligible for coverage, they too chose to receive a cash bonus in lieu of participation in the plan.

Petitioner's board of directors authorized and paid into the retirement trust, contributions in the amounts set forth below:

| For FYE Aug. 31— | Payments | Date of authorization | Date of payment |
|---|---|---|---|
| 1967 _____ | $100 | 8/18/67 | 8/31/67 |
| | 1,900 | | 11/15/67 |
| 1968 _____ | 2,000 | 8/8/68 | 10/7/68 |
| 1969 _____ | 1,000 | 8/22/69 | 8/29/69 |
| 1970 _____ | 9,000 | (Undisclosed) | 8/31/70 |

By a letter dated October 25, 1967, petitioner's authorized representative requested that the district director of internal revenue, Buffalo, N.Y., issue a determination letter holding that the plan which petitioner had adopted satisfied the requirements of section 401(a). The letter of October 25, 1967, summarized the basic provisions of the plan and was accompanied by a statement in which the following information was set forth: that petitioner had three employees, all of whom were eligible to participate in the plan, but only one of whom, Lausin, was in fact

covered:[3] that in the fiscal year ended August 31, 1967, Lausin received $21,986.88 in nondeferred compensation out of the $32,938.27 paid by petitioner to all of its employees; that Lausin was neither an officer nor a stockholder of petitioner and that his principal duties were not supervisory; and that the length of his service to petitioner was 7 years. The letter of October 25, 1967, also identified Herbert B. Collins, Jr., Richard G. Collins, and Annette L. Collins as petitioner's stockholders and directors and the Collins brothers as its officers.[4]

On November 22, 1967, petitioner's request for a determination letter was assigned to an agent of the respondent. The agent reviewed the materials submitted in support of that request, and on the basis of the information contained therein, erroneously concluded that petitioner's officers, the Collins brothers, were the two employees who had elected not to participate in the plan. In an effort to obtain clarification of this matter, the agent contacted the offices of petitioner's representative by telephone on January 5, 1968. Due to a misunderstanding, this exchange only confirmed the agent in the incorrect inference which he had previously drawn.

On January 31, 1968, a determination letter was issued, holding the plan qualified under section 401(a).

With respect to each of the years now before us, petitioner claimed as a deduction the amount it contributed to the trust established under the plan. These amounts were:

| FYE Aug. 31— | Deduction claimed |
|---|---|
| 1968 | $2,000 |
| 1969 | 1,000 |
| 1970 | 9,000 |

To each year's return was attached a statement containing information which in all respects relevant to the issues now before us was substantially the same as that contained in the statement attached to the letter of October 25, 1967.

Contributions to the trust were authorized for the fiscal years ended August 31, 1971, 1972, and 1973, but were not paid.

---

[3] Nowhere in the letter of Oct. 25, 1967, or in the statement appended thereto, were the employees of petitioner other than Lausin, identified by name, their duties described, or their relationship to petitioner set forth. The two other employees to whom reference was made were in fact Friel and Mallett, petitioner's clerical workers.

[4] Though they were petitioner's officers, the Collins brothers were not on petitioner's payroll nor did they consider themselves its employees. However, the letter of Oct. 25, 1967, and the statement appended thereto, did not indicate that this was the case.

Upon audit of petitioner's income tax returns for the fiscal years ended August 31, 1968, 1969, and 1970, respondent became aware that in holding petitioner's retirement plan qualified under section 401(a), he had been acting under a misapprehension as to the facts. The holding of January 31, 1968, was therefore revoked retroactively by a letter to petitioner dated January 20, 1971. The following reason was cited for this action:

[In order to qualify under section 401(a), a] plan must benefit employees in general, and towards this end, must cover either a number which is at least equal to that determined under the percentage provisions of Section 401(a)(3)(A) of the Code, or such employees as qualify under a nondiscriminatory classification within the purview of Code Section 401(a)(3)(B).

It is held that the participation of one employee does not meet the test of Section 401(a)(3)(A).

A Plan which fails to qualify under Section 401(a)(3)(A) of the Code may still qualify under Section 401(a)(3)(B) provided the classification of employees does not discriminate in favor of officers, shareholders, supervisors, or highly compensated employees.

The figure of three employees as of August 31, 1967 first does not include Herbert B. Collins, Jr., President, and Richard G. Collins, Secretary of Corporation who receive no salary from Harwood Associates, Inc. of the three employees as of August 31, 1967, all three satisfy the eligibility requirements. Two of the three eligible employees who are secretaries of the Corporation refused to participate. The annual compensation of the one participant for the year ending August 31, 1967 was $21,986; and for the employees who do not participate $6,110 and $4,761. The only participant receives compensation which is way in excess of the highest paid of the nonparticipants. Accordingly, the participant is within a class of employees with respect to which discrimination is prohibited.

By statutory notice respondent has disallowed the deductions which petitioner claimed for the fiscal years ended August 31, 1968, 1969, and 1970, by reason of its contributions for those years to the trust established pursuant to its profit-sharing retirement plan adopted as of August 31, 1967.

## OPINION

A retirement plan cannot be qualified within the meaning of section 401(a) if it discriminates in favor of highly compensated employees.[5] A plan which complies with section 401(a)(3)(A) is

---

[5] SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for

deemed nondiscriminatory by virtue of that compliance; but compliance with section 401(a)(3)(A) is impossible where, as in the case at bar, only one out of several persons employed and eligible for coverage actually participates in the plan. In enacting section 401(a)(3)(B), however, Congress saw fit to confer upon respondent the authority to determine that a plan not complying with section 401(a)(3)(A) is nevertheless not discriminatory in favor of highly compensated employees. It is appropriate that in exercising this authority respondent set forth in regulations the criteria which he shall employ in making the determinations called for. Such regulations are valid so long as they are reasonably conducive to the realization of the intent of Congress that retirement plans qualified under section 401(a) not discriminate in favor of highly compensated employees. See *Estate of Richard R. Wilbur,* 43 T.C. 322, 328 (1964). Section 1.401-3(c), Income Tax Regs., which we consider valid under the aforesaid standard and to which we will adhere, provides:

(c) Since, for the purpose of section 401, a profit-sharing plan is a plan which provides for distributing the funds accumulated under the plan after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as illness, disability, retirement, death, layoff, or severance of employment, employees who receive the amounts allocated to their accounts before the expiration of such a period of time or the occurrence of such a contingency shall not be considered covered by a profit-sharing plan in determining whether the plan meets the coverage requirements of section 401(a)(3)(A) and (B). *Thus, in case a plan permits employees to receive immediately the amounts allocated to their accounts, or to have such amounts paid to a profit-sharing plan for them, the employees who receive the shares immediately shall not, for the purpose of section 401, be considered covered by*

the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

* * *

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

*a profit-sharing plan.* [Emphasis added.] [6]

Applying this regulation to petitioner's plan of deferred compensation we find that in its operation the plan did discriminate in favor of highly compensated employees; for although all petitioner's employees were eligible for coverage under the plan, only a single highly compensated [7] employee chose to participate while all those employees who received a low level of compensation chose to receive a current cash bonus in lieu of coverage. [8]

We furthermore hold that respondent properly gave retroactive effect to his withdrawal of the determination letter of January 31, 1968. Under section 7805(b), respondent has authority to do so; and the exercise of that authority is proper where, as here, respondent was not in possession of all the material facts when making the determination which he later deemed it appropriate to withdraw, *Woodworth v. Kales,* 26 F.2d 178 (C.A. 6, 1928); *Austin Co. v. Commissioner,* 35 F.2d 910 (C.A. 6, 1929),[9] affirming 8 B.T.A. 628 (1927), certiorari denied 281 U.S. 735 (1930).

Although a plan of deferred compensation may not qualify under section 401(a), an employer may nevertheless be entitled to claim deductions by reason of his having contributed to a trust established pursuant to such a plan.

---

[6] See Rev. Rul. 56-497, 1956-2 C.B. 286, which provides:

*In the case of a profit-sharing arrangement which grants to each eligible employee an election to receive his allocable share of the profits by current cash payment to him or by payment to a deferred trust for his benefit, qualification of the plan as non-discriminatory must be judged by reference only to those employees who elect to participate in the deferred trust.* A determination is made both with respect to the coverage requirements and also as to nondiscrimination in contributions or benefits. See sections 1.401-3(c) and 1.401-4(a)(1)(ii), of the Income Tax Regulations, T.D. 6203, page 219, this Bulletin. [Emphasis added.]

[7] Lausin was unquestionably a highly compensated employee as that term is understood by the United States Court of Appeals for the Second Circuit. See *Commissioner v. Pepsi-Cola Niagara Bottling Corp.,* 399 F.2d 390 (C.A. 2, 1968), reversing 48 T.C. 75 (1967); see *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971).

[8] See Rev. Rul. 73-340, 1973-2 C.B. 134. A corporation adopted a pension plan in which its two employees were eligible to participate. The plan was held not to qualify under sec. 401(a) where a highly compensated officer was in fact covered while the other employee, a secretary receiving a low level of compensation, voluntarily waived her right to participate.

[9] In an attempt to justify his having given retroactive effect to the withdrawal of the determination letter, respondent urged us to find that the Collins brothers were in fact employees of the petitioner, and that its employees therefore numbered five rather than three as stated in the materials submitted in support of petitioner's application for a determination letter. It is not necessary for us to make such a finding in order to sustain respondent's action. It is sufficient under the authorities cited above, that despite a diligent effort on the part of his agent to obtain the relevant information, respondent issued the determination letter while under misapprehension as to material facts.

Section 404(a)(5)[10] provides that an employer is entitled to deduct the amount of a contribution made pursuant to a nonqualified plan prior to August 2, 1969, if the participating employees' rights derived from such a contribution were not forfeitable at the time when the contribution was made. Section 404(a)(5) provides that an employer is entitled to deductions in respect of a contribution made pursuant to a nonqualified plan after August 1, 1969, when and to the extent that the participating employees' rights derived from the contribution became vested.[11] The deductions which petitioner may claim for

---

[10] SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a * * * profit-sharing * * * plan * * *, such contributions * * * shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:
* * *

(5) OTHER PLANS.—In the taxable year when paid, if the * * * [profit-sharing plan is not qualified under sec. 401(a),] if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

[11] With respect to contributions made to profit-sharing plans after Aug. 1, 1969, sec. 404(a) provides:

(a) GENERAL RULE.—If contributions are paid by an employer to or under a * * * profit-sharing * * * plan * * *, such contributions * * * shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:
* * *

(5) OTHER PLANS.—If the [profit-sharing plan is not qualified under sec. 401(a),] in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee.

Amounts to be included in the gross income of employees by reason of contributions to a trust established pursuant to a plan which does not qualify under sec. 401(a), are determined under sec. 402(b).

SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(b) TAXABILITY OF BENEFICIARY OF NONEXEMPT TRUST.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. * * *

SEC. 83. PROPERTY TRANSFERRED IN CONNECTION WITH PERFORMANCE OF SERVICES.

(a) GENERAL RULE.—If, in connection with the performance of services, property is

the years now before us depend upon the extent to which Lausin's interest in the retirement trust vested in those years.

Petitioner's plan provides that vesting generally be governed by Article 9 which has been set forth in pertinent part in our Findings of Fact. Respondent contends that Lausin's interest in petitioner's retirement trust vested according to the schedule contained in that article in the years now before us. Petitioner contends on the other hand that under the circumstances obtaining in this instance, Article 12.5, set forth in full in our Findings of Fact, superseded Article 9.

The special vesting provisions of Article 12.5 were meant to become operative in either of two instances: when the employer has failed to make timely payment of the full amount due under the "Plan Contribution Formula," or when no amount has become due under that formula for 2 consecutive years.

The amount of the contribution to be made each year pursuant to the plan was to be determined in accordance with the provisions of Article 4 which have been set forth in pertinent part in our Findings of Fact. The meaning of that article is at best opaque. It first appears to authorize an annual contribution in an amount to be determined by petitioner's directors in an exercise of their discretion subject only to this limitation—that the contribution not exceed 15 percent of the compensation otherwise paid or accrued to employees covered by the plan during the year in question. The article then goes on apparently

transferred to any person other than the person for whom such services are performed, the excess of—

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

(2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. * * *
   * * *

(c) SPECIAL RULES.—For purposes of this section—

(1) SUBSTANTIAL RISK OF FORFEITURE.—The rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual.

(2) TRANSFERABILITY OF PROPERTY.—The rights of a person in property are transferable only if the rights in such property of any transferee are not subject to a substantial risk of forfeiture.

to require that contributions be fixed according to an elaborate formula which we need not paraphrase here.[12]

It would be unreasonable for us to resolve this apparent contradiction by holding that contributions had to be fixed in accordance with the formula to which we have made reference above; for so to hold would be to render meaningless the conferral on petitioner's directors of discretionary authority to determine the amount of each annual contribution. Rather, we think the key to reconciling the seemingly contrary provisions of Article 4 is to be found in the fact that the formula set forth therein is patterned after the provisions of section 404(a)(3)(A).[13] This section sets the upward limit on deductions that may be claimed for contributions made pursuant to profit-sharing plans which qualify under section 401(a). As petitioner's management intended that the plan should qualify under section 401(a), we interpret Article 4 to mean that for each year petitioner's directors could authorize a contribution in any amount not in excess of the amount deductible under section 404(a)(3)(A). This being the case, we fail to perceive how Article 12.5 could have become operative in any of the years now before us; for with respect to each of those years a contribution was authorized by petitioner's directors in an exercise of their discretion and timely paid. We therefore hold, as respondent has contended, that in the

---

[12] In our attempt to interpret art. 4, we are not unmindful of the fact that although the plan was drafted on behalf of petitioner who at all events bears the burden of proving respondent's determination erroneous, petitioner has afforded this Court scant evidence as to the intended meaning of the article.

[13] SEC. 404(a). GENERAL RULE.—If contributions are paid by an employer to or under a * * * profit-sharing * * * plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:
* * *
(3) STOCK BONUS AND PROFIT-SHARING TRUSTS.—
(A) LIMITS ON DEDUCTIBLE CONTRIBUTIONS.—In the taxable year when paid, if the contributions are paid into a * * * profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501(a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the * * * profit-sharing plan. If in any taxable year there is paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed 15 percent of the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. * * *

years in issue Lausin's interest vested in accordance with the schedule set forth in Article 9.[14]

*Decision will be entered under Rule 155.*

---

[14] The deductions which petitioner is entitled to claim under sec. 404(a)(5) for the years now before us may appropriately be computed under Rule 155, Tax Court Rules of Practice and Procedure.