WISCONSIN NIPPLE AND FABRICATING CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8642–74.   Filed December 16, 1976.

*Victor M. Harding,* for the petitioner.
*Scott R. Cox,* for the respondent.

SIMPSON, *Judge:* The Commissioner has determined the following deficiencies in the petitioner's Federal corporate income taxes:

| Year ending Apr. 30— | Deficiency |
|---|---|
| 1972 | $6,051.94 |
| 1973 | 6,132.46 |

We must decide whether the petitioner's profit-sharing plan qualified during the years in issue, and if not, whether the Commissioner's retroactive revocation of its qualified status constituted an abuse of discretion.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Wisconsin Nipple & Fabricating Corp., is a Wisconsin corporation, which had its principal office in West Allis, Wis., when the petition herein was filed. It filed its Federal corporate income tax returns for its taxable years ending April 30, 1972, and April 30, 1973, with the Internal

Revenue Service Center, Kansas City, Mo. A taxable year of the petitioner will be identified by the calendar year in which it ends.

Sometime prior to April 27, 1960, the petitioner was considering the possibility of adopting a profit-sharing plan under which funds would be contributed to a trust and distributed to the employees subsequently. For many years prior to 1960, it had a plan for paying cash bonuses currently to its employees, including its hourly paid employees. The amounts paid out under such plan were based upon an employee's wages and years of service. The petitioner decided that it could not afford to continue the cash bonus payments to the hourly employees and also include them within the profit-sharing plan. Consequently, the petitioner asked such employees under which plan they would like to participate. Their response at that time was that they would rather continue with the cash bonus plan.

The petitioner adopted a profit-sharing plan on April 27, 1960, effective for its taxable year ending April 30, 1960, providing that only regular and full-time salaried employees, having at least 1 year of tenure, were eligible to participate in it. In addition, the plan provided that a participant's account balance vested gradually and became fully vested after 10 years of service. After the adoption of the plan, the petitioner continued making cash bonus payments to its hourly employees for 1960 and all subsequent years, including those in issue, until its 1974 taxable year. However, during those years, the petitioner also made cash bonus payments to a number of the participants of the plan.

On April 29, 1960, counsel for the petitioner submitted a certified copy of the profit-sharing plan, together with the required data, to the District Director of Internal Revenue, Milwaukee, Wis., for a determination whether the plan qualified under section 401 of the Internal Revenue Code of 1954[1] and whether the profit-sharing trust was exempt under section 501. After the petitioner supplied additional information requested by the IRS, a determination letter was issued

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

on May 31, 1960, stating that the plan qualified under section 401(a).

Subsequently, in June 1962, the petitioner amended its profit-sharing plan with respect to forfeitures, and it submitted the amendment to the Commissioner asking him to rule on the continuing qualification of the plan. On July 16, 1962, the IRS issued another determination letter to the petitioner which provided that the plan, as thus amended, continued to qualify under section 401(a).

During the years 1960, 1962, 1971, and 1972, the position, years of service, and compensation of the participants in the plan, and the compensation of the hourly employees with at least 1 year of service were as follows:

| Position | Years of service | Compensation | Excluded Employees Compensation | |
|---|---|---|---|---|
| **1960** | | | | |
| Chief executive | 1 | $11,448.76 | $5,823.58 | $3,902.45 |
| Vice president sales | 1 | 11,310.00 | 5,387.40 | 3,834.92 |
| Purchasing agent and | | | 5,162.36 | 3820.52 |
| production | 1 | 6,807.82 | 4,593.59 | 3,595.25 |
| Bookkeeper | 1 | 5,995.76 | 4,468.10 | 3,581.15 |
| | | | 4,249.96 | 3,393.23 |
| | | | 4,066.49 | 3,338.17 |
| | | | 4,024.50 | |
| **1962** | | | | |
| Chief executive | 3 | $15,476.04 | $6,409.30 | $4,152.74 |
| Vice president sales | 3 | 14,641.00 | 5,604.04 | 4,025.17 |
| Purchasing agent and | | | 5,537.67 | 3,957.67 |
| production | 3 | 7,210.93 | 5,215.78 | 3,903.34 |
| Bookkeeper | 3 | 6,383.30 | 5,186.94 | 3,815.37 |
| | | | 4,766.52 | 3,306.40 |
| | | | 4,552.54 | 3,169.56 |
| | | | 4,253.38 | |
| **1971** | | | | |
| Chief executive | 12 | $24,477.09 | $8,501.88 | $5,406.19 |
| Vice president sales | 12 | 21,404.75 | 8,009.38 | 5,298.74 |
| Purchasing agent and | | | 7.933.56 | 5,277.57 |
| production | 12 | 11,159.70 | 7,596.91 | 4,802.91 |
| Bookkeeper | 12 | 10,328.24 | 7,169.69 | 4,745.74 |
| Foreman | 12 | 9,807.32 | 6,825.47 | 4,589.49 |
| Board chairman | 3 | 5,100.00 | 6,610.48 | 4,531.61 |
| | | | 5,416.33 | |
| **1972** | | | | |
| Chief executive | 13 | $25,989.39 | $9,056.06 | $5,628.86 |
| Vice president sales | 13 | 20,210.00 | 8,572.28 | 5,486.82 |
| Purchasing agent and | | | 8,345.27 | 5,163.88 |
| production | 13 | 11,990.58 | 8,007.83 | 5,013.97 |

| | | | | |
|---|---|---|---|---|
| Bookkeeper | 13 | 11,155.01 | 7,651.56 | 4,882.68 |
| Foreman | 13 | 10,629.34 | 7,001.91 | 4,811.15 |
| Board chairman | 4 | 5,100.00 | 5,828.17 | 4,741.68 |
| | | | 5,727.40 | 4,479.50 |

In the summer of 1973, the petitioner's corporate returns for its taxable years 1972 and 1973 were audited, and the petitioner, for the first time, was specifically told that the IRS was questioning the qualification of its profit-sharing plan. The petitioner's president then held a meeting with the hourly employees as a group, and they generally expressed the opinion that they would prefer participating in the profit-sharing plan instead of receiving a cash bonus. Thus, on December 28, 1973, the petitioner amended its plan, effective May 1, 1973, so as to include hourly employees on the same basis as salaried employees.

In a letter dated March 27, 1974, the District Director of Internal Revenue, Milwaukee, Wis., notified the petitioner that its profit-sharing plan was not qualified during its 1972 and 1973 taxable years.

On the petitioner's tax return for its 1972 taxable year, it deducted $12,608.20 for the contribution it made to its profit-sharing plan for that year, and on its 1973 tax return, it deducted $12,775.96 for the contribution it made to its profit-sharing plan for that year. In the Commissioner's notice of deficiency, he determined that the petitioner's profit-sharing plan was not qualified during the years in issue under section 401(a) and disallowed the petitioner's contributions to it for such years.

## OPINION

Section 404(a)(3) allows an employer a limited deduction for contributions made to or under a profit-sharing plan if the contributions are ordinary and necessary business expenses under section 162 and if the profit-sharing plan is exempt under section 501(a). Section 401(a) sets forth the requirements a profit-sharing plan must meet to qualify for exemption under section 501(a). The first issue to be decided in this case is whether the petitioner's profit-sharing plan satisfied in 1972 and 1973 the coverage requirement of section 401(a)(3)(B), which provides:

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

* * *

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits * * *

* * *

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

During the years in issue, of the six individuals covered by the petitioner's profit-sharing plan, three of them were officers—the chairman of the board of directors, the chief executive officer, and the vice president in charge of sales. The petitioner concedes that another two of the plan participants were supervisors. Thus, five out of six of the covered employees are certainly within the group in whose favor discrimination is prohibited by section 401(a)(3)(B) (the prohibited group), and the participants in the plan (except for the chairman of the board whose minimal salary is not explained in this record) were the most highly compensated employees. In addition, in 1972, out of the total of 21 permanent employees with at least 1 year of service, only 6 were covered by the plan, and in 1973, of the total of 22 permanent employees with at least 1 year of service, again only 6 were covered. Furthermore, none of the lower paid employees were participants in the plan (again excluding the chairman of the board). On these facts, it is very clear that during the years in issue the petitioner's profit-sharing plan discriminated in favor of the prohibited group. Cf. *Cornell-Young Co. v. United States*, 469 F.2d 1318, 1324–1325 (5th Cir. 1972); *Babst Services, Inc.*, 67 T.C. 131 (1976); *Liberty Machine Works, Inc.*, 62 T.C. 621, 631–632 (1974), affd. per curiam 518 F.2d 554 (8th Cir. 1975); *George Loevsky*, 55 T.C. 1144, 1149–1150 (1971), affd. per curiam 471 F.2d 1178 (3d Cir. 1973), cert. denied 412 U.S. 919 (1973); *Ed & Jim Fleitz, Inc.*, 50 T.C. 384, 390 (1968); *John Duguid & Sons, Inc. v. United States*, 278 F.Supp. 101, 105 (N.D. N.Y. 1967).

The petitioner appears to argue that its profit-sharing plan was not discriminatory during the years in issue because it had a program of paying cash bonuses to its hourly employees. However, there is no merit to such argument because the qualification of a plan must be based upon those employees who participate therein; employees who are ineligible but receive a cash bonus are not to be considered as participants in judging the qualification of the plan. Sec. 1.401–3(c), Income Tax Regs.; *Harwood Associates, Inc.,* 63 T.C. 255, 262–263 (1974). Moreover, some of the salaried employees covered by the profit-sharing plan also received cash bonuses, and since no information has been supplied relating to the amounts of cash bonuses paid to the hourly employees, there is no assurance that such bonuses constituted as large a percentage of compensation as that received by the salaried employees covered under the plan.

Even though we have held that the petitioner's profit-sharing plan was discriminatory within the meaning of section 401(a) during the years in issue, the petitioner contends that, nevertheless, the Commissioner cannot disqualify its plan for the years in issue because he previously issued a favorable determination letter in 1960 and again in 1962, and because, it asserts, there has been no material change in facts or applicable law. The petitioner vigorously argues that the Commissioner's attempt in 1974 to revoke retroactively the qualification of its profit-sharing plan constituted an abuse of the discretion conferred upon him by section 7805(b).[2] For the reasons set forth below, we hold that the Commissioner's action was authorized by the law.

Although the petitioner asserts that there was no material change in the facts concerning the operation of its profit-sharing plan between the time of the favorable determinations by the Commissioner and the years in issue, the evidence does not support such an assertion. The coverage under the plan changed over the years: At the time of the favorable determinations, there were four participants; but in 1972 and 1973, there were two additional participants—the

---

[2] (b) RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

chairman of the board and a foreman, who the petitioner has conceded was a supervisor. Thus, the coverage of the plan was increased by 50 percent, and the new participants were both members of the prohibited group. Such changes in the coverage of the plan are surely material; thus, this is not a situation in which there were no material changes in the facts or in which the facts upon which the rulings were based remained static. Compare *Lesavoy Foundation v. Commissioner,* 238 F.2d 589 (3d Cir. 1956), revg. 25 T.C. 924 (1956), and *H. S. D. Co. v. Kavanagh,* 191 F.2d 831, 846 (6th Cir. 1951). In view of such material changes, the petitioner was no longer justified in relying upon the Commissioner's earlier rulings. Cf. secs. 601.201(a)(2) and (3), 601.201(l)(5), and 601.201(m), Statement of Procedural Rules; *Myron v. United States,* 382 F.Supp. 590, 597 (C.D. Cal. 1974). In analogous situations, when there have been similar material changes in the facts on which a ruling was based, the courts have upheld the Commissioner's authority to revoke the ruling retroactively. E.g., *Lowry Hospital Association,* 66 T.C. 850, 860 (1976); *Maynard Hospital, Inc.,* 52 T.C. 1006, 1029 (1969); *Stevens Bros. Foundation, Inc.,* 39 T.C. 93, 110 (1962), affd. on this issue 324 F.2d 633 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964); *Lorain Avenue Clinic,* 31 T.C. 141, 163, 164 (1958); *Myron v. United States, supra;* see also *H. S. D. Co. v. Kavanagh, supra* at 846; Lynn & Gerson, "Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies," 19 Tax L. Rev. 487, 509 (1964); cf. *Harwood Associates, Inc.,* 63 T.C. at 263.

Furthermore, in spite of the petitioner's claim that it had no notice during the years in issue that the IRS intended to disqualify its plan, the facts are otherwise. In late 1969, the IRS issued Rev. Rul. 69–398, 1969–2 C.B. 58, in which it ruled that a profit-sharing plan covering only salaried employees with 3 years of service discriminated in favor of the "highly compensated" employees and hence did not qualify under section 401(a)(3)(B). In such ruling, the salaries of the covered and the excluded employees were stated as follows:

| Covered employees (salaried) | Excluded employees (hourly paid) |
|---|---|
| $30,000 | $7,000 |
| 12,000 | 7,000 |

| | |
|---|---|
| 10,000 | 6,000 |
| 9,000 | 6,000 |
| 8,500 | 5,500 |
| 6,500 | 5,500 |
| | 5,500 |
| | 4,500 |

The IRS pointed out that of the six participants in the plan, five of them received substantially more compensation than the excluded employees with the fifth highest paid receiving $1,500 more than the highest paid excluded employee. On such facts, the IRS concluded that such five employees were "highly compensated" and that therefore there was prohibited discrimination.

The petitioner has not challenged the legal standard used in Rev. Rul. 69–398, but it contends that the facts of that ruling are significantly different than the facts concerning its profit-sharing plan. However, in the revenue ruling, the IRS found that five of the six participants in the plan were members of the prohibited group and that when such a situation existed, the plan was discriminatory within the meaning of section 401(a). The essential facts of the petitioner's profit-sharing plan were not significantly different: At least five of the six participants were in the prohibited group. Consequently, in the light of that revenue ruling, it should have been clear to the petitioner in late 1969 that the IRS considered a plan, such as the petitioner's, not to qualify under section 401(a), and its reliance on the prior determination letters was no longer reasonable.

It has been a longstanding practice of the IRS to assure taxpayers that they may rely upon rulings which they have obtained from the IRS, but such practice is subject to a number of limitations. See Caplin, "Taxpayer Rulings Policy of the Internal Revenue Service: A Statement of Principles," 20th Ann. N.Y.U. Tax Inst. 1, 19–22 (1962). For example, a private ruling is controlling only with respect to the specific facts presented and may not be relied upon if there is a material change in the facts. See secs. 601.201(a)(2) and (3), 601.201(l)(5), 601.201(m), and 601.201(n)(6)(i), Statement of Procedural Rules. In addition, a private ruling may be revoked by a subsequent published ruling. See sec. 601.201(l)(4), Statement of Procedural Rules; see also Caplin, supra at 19, 21–22. Thus, a taxpayer must keep informed

about subsequent published rulings of the IRS which may affect his private ruling. In this situation, we do not know whether the petitioner was in fact aware of Rev. Rul. 69–398; nevertheless, such revenue ruling impliedly revoked the private rulings previously secured by the petitioner. In view of that published revenue ruling and the material changes in the plan, it cannot be said that the Commissioner's 1974 revocation of the petitioner's private rulings was in violation of his own administrative procedures.

Moreover, the Supreme Court has held that the Commissioner has broad discretion in deciding whether to revoke a ruling retroactively and that the courts cannot interfere with his action unless there is a clear abuse of his discretion. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184 (1957); see *Dixon v. United States*, 381 U.S. 68, 71, 80 (1965). In view of the material changes in the participation by the prohibited group in the plan, and in view of the fact that the petitioner was on notice, prior to the years in issue, that the IRS no longer considered its plan qualified, there is no basis for us to disturb the Commissioner's action, and accordingly, we hold that his retroactive revocation did not constitute an abuse of discretion.

The cases cited by the petitioner—*Lesavoy Foundation v. Commissioner*, 238 F.2d 589 (3d Cir. 1956), revg. 25 T.C. 924 (1956); *H. S. D. Co. v. Kavanagh, supra*—in support of its position are clearly distinguishable from the situation herein. In those cases, there was no material change in the operation of the plan or the organization in question, and it would have been harsh and inequitable to have allowed the retroactive revocation. Here, as we have found, neither circumstance is present. In *Time Oil Co. v. Commissioner*, 258 F.2d 237 (9th Cir. 1958), remanding 26 T.C. 1061 (1956), and *Sherwood Swan & Co.*, 42 T.C. 299 (1964), affd. 352 F.2d 306 (9th Cir. 1965), also relied upon by the petitioner, it was found that the profit-sharing plan was not disqualified because of its operation. Here, such a finding has not been made.

In his brief, the Commissioner recognized that if the petitioner's profit-sharing plan did not qualify under section 401(a), the contributions to it are deductible to the extent provided by section 404(a)(5), relating to contributions to nonqualified plans. The amounts so allowable may be

determined in computing the decision in accordance with Rule 155, Tax Court Rules of Practice and Procedure.

*Decision will be entered under Rule 155.*