**GROSS DISTRIBUTING COMPANY,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 82–1524.**

United States Court of Appeals,
Sixth Circuit.

June 16, 1983.

Martin Welenken, Judith A. Rosenberg (argued), Welenken, Himmelfarb & Rosenberg, Louisville, Ky., for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., George M. Sellinger, Washington, D.C., Glenn L. Archer, Jr., Michael L. Paup, Michael Roach (argued), Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

ORDER

This is an appeal from a judgment of the United States Tax Court upholding the Commissioner of Internal Revenue's retroactive declaration that the pension and profit sharing plans of petitioner-appellant Gross Distributing Company (the Company) were non-qualified plans for certain years.

In January 1961, the Company submitted its recently adopted pension and profit sharing plans to the IRS, seeking a determination that the plans qualified under section 401 of the Internal Revenue Code of 1954, and that the trusts were exempt from taxation under section 501. As amended by the Board of Directors in March, 1961, the pension plan covered salaried employees between 30 and 55 with annual earnings greater than $3,600. Two years of service were required for participation at the outset, but that figure was to increase to five years of service after the plan had been in effect four years. The profit sharing plan had the same age requirements and required two years of service.

On March 16, 1961, the Commissioner issued determination letters stating that both plans qualified under section 401(a) and were exempt from taxation under section 501. At that time three of twenty-one employees were eligible to participate. The Commissioner's letter drew the Company's attention to the tax regulations which state that the law "is concerned not only with the form of a plan but also its effects in operation." In December, 1970, the Company sought and received determinations from the Commissioner that proposed investments by both trusts would not constitute prohibited transactions. At that time, four of seventeen total employees were eligible and participating. The Commissioner in that letter expressly refused to comment on the continued qualification of the plans.

In January 1971, the interest of one employee participating in the plan was terminated. At the beginning of the 1972 plan year, three participating employees remained. Soon after, one of them terminated his employment and the other became a commission salesman and thus ineligible to participate. Clark Gross, the president and sole shareholder of the Company was the only remaining participant at the end of the 1972 plan year.

Twice during 1972, the plan administrator wrote to the Company expressing concern over the continued qualification of the plans and urging steps to avoid disqualification. Approximately a year after the second letter, Gross communicated to the administrator, through the Company's accountant, his intent to terminate the plans. Little if any action was taken until 1975. The plans were finally terminated in November, 1977, with the decision retroactively effective November 30, 1976.

In March, 1978, the Company requested a determination that the plans were qualified when terminated. On December 29, 1980, the Commissioner issued a final revocation letter revoking the plans' qualification for 1972 and subsequent plan years for failure to meet the coverage requirements of section 401(a)(3)(B). That section forbids plans from discriminating in favor of "employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees."

On appeal the Company challenges the Tax Court finding that neither plan is qualified for the 1972 and subsequent plan years, and further argues that the Commissioner's retroactive revocation of the qualification constituted an abuse of discretion. We find no error in the decision of the Tax Court.

■ Section 401(a)(3)(B) conditions qualification of a plan upon a finding that it does not discriminate in favor of anyone in a "prohibited group" (those groups mentioned above). The Commissioner looks to the effect of the plan as well as its form when considering the issue of discrimination. *See* Sec. 1.401–1(b)(3), Income Tax Regs. The Company's plans clearly discriminated in violation of section 401(a)(3)(B) in 1972 and subsequent years, where the sole beneficiary was the only shareholder, a corporate officer and supervisor, and the most highly compensated employee. *See Pulver Roofing Co. v. Commissioner,* 70 T.C. 1001, 1010–11 (1978); *Wisconsin Nipple and Fabricating Corp. v. Commissioner,* 67 T.C. 490 (1976), *aff'd.* 581 F.2d 1235 (7th Cir. 1978).

■ The Company argues disqualification was nevertheless improper under the

"Doctrine of Unforeseen Circumstances" which excuses plan discrimination when the events which caused the situation are unforeseeable. According to the Company, a downturn in business was responsible for the loss of eligible employees. Because the plan as originally formulated was not inherently discriminatory, the Company should not be penalized for later circumstances beyond its control.

*Lansons, Inc. v. Commissioner,* 69 T.C. 773 (1978), *aff'd.* 622 F.2d 774 (5th Cir.1980), cited by the Company in support of its argument, is not persuasive. That case, as Appellant recognizes in its brief, held that a plan need not be disqualified where the purpose and effect of the eligibility requirements are to avoid immediate coverage of non-permanent employees. This holding allowed a plan to remain qualified despite minor year-to-year changes in business or in employee turnover. The plan upheld in that case was more liberal than the one at issue here. Furthermore, the Tax Court found no actual discrimination by the plan in operation. *See also Ryan School Retirement Trust v. Commissioner,* 24 T.C. 127 (1955); *Sherwood Swan and Co., Ltd. v. Commissioner,* 42 T.C. 299 (1964), *aff'd.* 352 F.2d 306 (9th Cir.1965).

In the present case, the plan was extremely limited in its coverage, and made participation by new employees very difficult. The business change here was not a temporary fluctuation, but a semi-permanent one which made Gross the only beneficiary for over four years. By 1972, because of the five year service requirement, it was clear that no other employee could become eligible until 1977. Failure to change the plan to accommodate a change in employees that continued over such a long period is not protected under any "Doctrine of Unforeseen Circumstances."

The Company's argument that the Commissioner abused his discretion by making the disqualification retroactive is equally devoid of merit. *Pulver Roofing, supra,* clearly authorizes retroactive disqualification where, as here, (1) a significant, permanent change in the business has occurred;

(2) that change increases participation by a prohibited group and reduces participation by other employees; and (3) the company does not alter its plan to take such change into consideration. The Company delayed in responding to warnings from its plan administrator. Also it had constructive notice that its plan would be unacceptable based on the IRS's issuance of Rev.Rul. 66–13, 1966–1 C.13.73 which held that a plan in which the only participants were members of the prohibited group would be unacceptable. In view of these circumstances, and the fact that a material change had occurred in employee participation in the plans, the Company was not justified in relying on the Commissioner's 1961 determination of qualification. *See Wisconsin Nipple and Fabricating Corp., supra* at 496.

Accordingly, we affirm the judgment of the Tax Court, upholding the Commissioner's retroactive disqualification of the pension and profit sharing plans of Gross Distributing Company.