BASCH ENGINEERING, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Basch Engineering, Inc. v. Commissioner
Docket No. 30841-88R
United States Tax Court
T.C. Memo 1990-212; 1990 Tax Ct. Memo LEXIS 231; 59 T.C.M. (CCH) 482; T.C.M. (RIA) 90212; 12 Employee Benefits Cas. (BNA) 1414; April 25, 1990, Filed *231 Decision will be entered for the respondent. Anthony S. Hart III, for the petitioner. Patricia Scott-Clayton, for the respondent. TANNEWALD, Judge. TANNENWALD
MEMORANDUM OPINION Respondent determined that petitioner's profit-sharing plan failed to comply with the requirements of section 401(a)[1] for plan years ending on and after March 31, 1985. Having exhausted its administrative remedies, petitioner is before this Court, pursuant to section 7428, seeking a declaratory judgment as to the correctness of respondent's action. This case was submitted under Rule 122. The parties have filed a joint stipulation as to the administrative record pursuant to Rule 217(b)(1). The evidentiary facts and representations contained in the record are presumed to be true for the purpose of this proceeding. Petitioner adopted a profit-sharing plan (the plan), which was effective on April 1, 1978, and had a March 31 year end. On April 18, 1980, respondent issued a favorable determination *232 concerning the qualification of the plan. From 1982 through 1987 the plan had two participants, Sherwood Basch and Roy Olovson, who at all times were petitioner's only employees. Sherwood Basch was petitioner's president, and Roy Olovson was petitioner's secretary and/or vice president. From 1982 through 1987, the following contributions were made by petitioner to its plan: Plan Year
Amount
1982
$ 1,300.00
1983
700.00
1984
4,200.00
1985
7,200.00
1986
-0-   1987
-0-   On December 15, 1987, petitioner terminated its plan because of its own liquidation or dissolution. Upon termination, petitioner distributed all of the plan's assets equally to Sherwood Basch ($ 18,019.20) and Roy Olovson ($ 18,019.20). At the time of the terminating distribution, one of the participants was eligible for normal retirement and the other was eligible for early (but not normal) retirement. Normal retirement was at age 65 under the terms of the plan. On December 30, 1987, petitioner filed Form 5310, Application for Determination Upon Termination. Respondent issued a final adverse determination letter on August 26, 1988, concluding that the plan did not meet the qualification requirements of section 401(a) for plan *233 years ending on and after March 31, 1985. Respondent's reason for his determination and his position herein is that petitioner's plan is not qualified under section 401(a) for plan years ending on and after March 31, 1985, because the plan was not amended to comply with the requirements of section 401(a) by incorporating the changes required by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324; the Tax Reform Act of 1984 (TRA), Pub. L. 98-369, 98 Stat. 494; and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426. Petitioner asserts that its plan as written substantially complied with the requirements of TEFRA, TRA, and REA and that there were no changes in these Acts which could have affected the operation of the plan and thus any language modifications would have been meaningless under the existing facts and circumstances. We agree with respondent. There is nothing in the record which indicates that petitioner's profit-sharing plan was amended at any time nor does petitioner claim that it was. Consequently, we have no reason to consider whether petitioner satisfied the timetable for remedial amendments to plan provisions *234 designed to meet the substantial changes in plan requirements as set forth in the amendments to section 401(a) contained in the foregoing Acts. See sec. 1.401(b)-1, Income Tax Regs.; Notice 85-5, 1985-1 C.B. 427; and Notice 86-3, 1986-1 C.B. 388. A qualified profit-sharing plan both by its terms and its operations must meet the statutory requirements. Buzzetta Construction Corp. v. Commissioner, 92 T.C. 641, 646 (1989). Petitioner's contention that its plan satisfies this standard misses the mark. It is based entirely upon hindsight and fails to take into account the fact that the plan continued in existence during the plan years ending on and after March 31, 1985, despite the fact that no contributions were made during the plan years 1986 and 1987. As far as the record herein is concerned, there is no evidence that such failure to contribute represented anything more than a temporary suspension of contributions. Cf. secs. 401(a)(7), 411(d)(3). See also Sherwood Swan & Co. v. Commissioner, 42 T.C. 299, 306 (1964), affd. 352 F.2d 306 (9th Cir. 1965). The evaluation of petitioner's failure to amend the plan in order to meet the new legislative requirements must be made in the *235 context of what might have occurred rather than what in fact occurred during those plan years. We see no need to articulate each and every amendment to petitioner's plan which appears to have been required. It is sufficient if we set forth some critical elements which are missing: (1) Section 202(a) of REA amended section 410(a)(1)(A) to lower the age limitation for the minimum required participation from 25 to 21. Petitioner's plan provided: 3.1 Age and Service. Except as provided in Section 3.2, an Employee who has attained the age of 24 1/2 and has completed six months of employment will participate on the first day of the first Plan Year after such age and service requirements are satisfied. Clearly, petitioner's plan did not comply with the statutory requirements. Such noncompliance is not avoided by the fact that petitioner only had the two employees who were both older than 21. That a defective provision does not become operative does not mean that the plan meets the statutory requirement. See Tionesta Sand and Gravel, Inc. v. Commissioner, 73 T.C. 758, 764 (1980), affd. without published opinion 642 F.2d 444 (3d Cir. 1981). It is possible that during the plan years at *236 issue there could have been an employee who attained the age of 21 and who would not have been eligible to participate in the plan even though he had satisfied the minimum service requirement (1 year under the statute, see sec. 410(a)(1)(A)(ii)). (2) Section 240(a) of TEFRA added section 416, [2] *237 which provides special rules for top-heavy plans applicable during the relevant years. With respect to a defined contribution plan (which term includes petitioner's profit-sharing plan, see sec. 414(i)), section 416(g)(1)(A)(ii) provides: (A) Plans not required to be aggregated. -- * * * the term "top-heavy plan" means, with respect to any plan year -- * * * (ii) any defined contribution plan if, as of the determination date, the aggregate of the accounts of key employees under the plan exceeds 60 percent of the aggregate of the accounts of all employees under such plan. It is beyond argument that petitioner's plan was a top-heavy plan since the aggregate accounts of Sherwood Basch and Roy Olovson exceeded the 60 percent limitation. Section 416 further provides in pertinent part: (a) General Rule. -- A trust shall not constitute a qualified trust under section 401(a) for any plan year if the plan of which it is a part is a top-heavy plan for such plan year unless such plan meets -- (1) the vesting requirements of subsection (b), * * * (b) Vesting Requirements. -- (1) In general. -- A plan satisfies the requirements of this subsection if it satisfies the requirements of either of the following subparagraphs: (A) 3-year vesting. -- A plan satisfies the requirements of this subparagraph if an employee who has completed at least 3 years *238 of service with the employer or employers maintaining the plan has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions. (B) 6-year vesting. -- A plan satisfies the requirements of this subparagraph if an employee has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions determined under the following table: Years of service
The nonforfeitable
percentage is:
2        20
3        40
4        60
5        80
6 or more
100
Petitioner's plan provided: 6.4 Vesting of Employer Contributions. A Participant shall have a Nonforfeitable interest in the percentage of his/her Employer Contribution Account determined pursuant to the following schedule: Period of
Nonforfeitable
Period of
Nonforfeitable
Service
Percentage
Service
Percentage
Less than 4 years
0 8        70
4
40
9        80
5
45
10        90
6
50
11 or more
100
7
60
Clearly, petitioner could have had employees who would have become participants under a provision meeting the amended requirements of section 410(a)(1)(A), see page 5, supra, and could have completed 2 years of service during the plan years 1985 to 1987, thereby becoming entitled to a 20-percent nonforfeitable percentage *239 instead of the zero percent provided by the plan. Petitioner's plan also provided: 6.3 Termination, Partial Termination, or Complete Discontinuance of Employer Contributions. Notwithstanding any other provision of this Plan, in the event of a termination or partial termination of the Plan, or a complete discontinuance of Employer contributions under the Plan, all affected participants shall have a Nonforfeitable interest in their Employer Contribution Accounts determined as of the date of such event. * * * The defective vesting provision is not cured by this provision and by the facts that all contributions ceased after petitioner's 1985 taxable year and that the plan was terminated. This provision does not supply the requisite vesting schedule of section 416(b) because it covers vesting only upon the happening of one of the stated events. Cf. Tionesta Sand and Gravel, Inc. v. Commissioner, 73 T.C. at 762. (3) Section 240(a) of TEFRA also added section 416(c), which requires that a plan must provide minimum benefits for nonkey employees. See sec. 416(c)(2). Petitioner's plan did not have any provisions relating to the minimum benefits for non-key employees. Therefore, its plan *240 as written did not comply with the statutory requirement. Again, this defect is not altered by the fact that all contributions ceased for plan years after 1985. There are other matters involving provisions as to the payment of benefits, the lowering of the age limit for disregarding years of service required for minimum vesting, the treatment of breaks in service, etc., in respect of which events could have occurred and which would not have provided for in the plan in a manner required by statute. We see no need to dissect the various technical aspects of such situations because the areas which we have previously discussed provide ample foundation for our holding that petitioner's plan did not meet the qualification requirements of section 401(a) for the plan years ending on or after March 31, 1985. Finally, we reject petitioner's argument that respondent has abused his discretion in retroactively revoking petitioner's favorable ruling. The Supreme Court has held that the Commissioner has broad discretion under section 7805(b) in deciding whether to revoke a ruling retroactively, and that his discretion is reviewable by the courts only for abuse of that discretion. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184 (1957); *241 Virginia Education Fund v. Commissioner, 85 T.C. 743, 752 (1985), affd. 799 F.2d 903 (4th Cir. 1986). The Commissioner, however, has limited his own discretion to revoke retroactively a favorable ruling. Section 601.201(1)(5), Statement of Procedural Rules, provides: (5) Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment. * * * In the present case, the enactments of TEFRA, TRA, and REA made changes in the applicable law which necessitated the amendment of petitioner's plan as written within the *242 specified time periods. In Wisconsin Nipple and Fabricating Corp. v. Commissioner, 581 F.2d 1235 (7th Cir. 1978), affg. 67 T.C. 490 (1976), the taxpayer's argument that respondent was not justified in revoking a prior favorable determination in respect of a profit-sharing plan was rejected. There the taxpayer failed to conform the plan within the time period permitted to comply with a subsequent revenue ruling articulating a different requirement. In so doing, the Court of Appeals stated: Nothing requires the Commissioner to issue an opinion with respect to the qualification of a taxpayer's profit-sharing plan. It is not unreasonable for him to charge a taxpayer receiving the benefit of such an opinion with the responsibility of keeping abreast of current developments in the law to be assured that his plan is still in compliance. * * * [581 F.2d at 1241.] Applying the foregoing principle, we find no abuse of discretion in respondent's retroactive revocation of petitioner's favorable determination for the plan years at issue herein since petitioner failed to amend its plan within the remedial time for amendment. For the foregoing reasons, Decision will be *243 entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 401(a)(10)(B) provides: (10) Other requirements. -- * * * (B) Top-heavy plans. -- (i) In general. -- In the case of any top-heavy plan, a trust forming part of such plan shall constitute a qualified trust under this section only if the requirements of section 416 are met. (ii) Plans which may become top-heavy. -- Except to the extent provided in regulations, a trust forming part of a plan (whether or not a top-heavy plan) shall constitute a qualified trust under this section only if such plan contains provisions -- (I) which will take effect if such plan becomes a top-heavy plan, and (II) which meet the requirements of section 416. (iii) Exemption for governmental plans. -- This subparagraph shall not apply to any governmental plan.↩